RECEIVED

SEP 1 9 2018

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LOIS OUZTS | DOCKET NO.: 1:16-cv-00277 |
| VERSUS | JUDGE DEE D. DRELL |
| LEEBOS STORES, INC, ET AL | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment (Doc. 32) filed by Defendants, Leebos Stores, Inc. ("Leebos"), and Stokes-Harris Enterprises, Inc. ("Stokes-Harris"), in which they seek dismissal of all claims against them in the above-captioned matter. Plaintiff Lois Ouzts ("Ouzts") filed a response (Doc. 38), and Defendants filed a reply (Doc. 44). For the following reasons, the Court finds that Defendants' motion should be **GRANTED**.

## I. FACTS & PROCEDURAL HISTORY

Ouzts, a female former employee of Stokes-Harris who was promoted through the ranks to Director of Operations ("DOO") before her resignation, alleges that a male Chief Operating Officer ("COO") was paid more than her even though he had the same responsibilities during part of his tenure.

Leebos and Stokes-Harris are Louisiana corporations which are part of a family of businesses owned by Lance Harris ("Harris").[1] Stokes-Harris operates as a management company for Harris' various businesses, including Leebos.[2] Leebos runs a number of convenience stores across central Louisiana.[3]

---

[1] Statement of Uncontested Material Facts (Doc. 32-7), at ¶ 1.
[2] Id. ¶ 2.
[3] Id. ¶ 3.

Ouzts was first hired by Leebos as a cashier and deli employee in 1994.[4] Prior to working at Leebos, she had worked as a cashier, bank teller, and pharmacy clerk.[5] Between 1996 and 2001, Ouzts voluntarily left and returned again to work for Leebos as a cashier/deli employee on three separate occasions.[6] She returned to Leebos in 2003, rehired in the position of cashier/deli employee.[7]

In 2004, Ouzts was promoted to store manager.[8] This was her first ever supervisory position.[9] As manager, she oversaw the operation of a single Leebos store.[10] Her duties as manager included hiring and firing, inventory control, ordering, bank deposits, sales paperwork, stocking inventory, maintaining cleanliness of the store, scheduling, timesheets, and store meetings with employees.[11] Around 2007, Ouzts was promoted to supervisor over one Leebos store.[12] She later supervised three, then five stores, providing training and overseeing store managers' and manager trainees' performance of the same duties that she had previously provided as a manager.[13]

On or about November 21, 2011, Ouzts was promoted to DOO over Leebos' ten operating stores.[14] As DOO, her additional duties included writing checks, banking errands, and preparing, packaging, and transporting meat for another Harris business venture.[15] During 2014, she also assumed some accounting responsibilities for other Harris companies.[16] On July 10, 2015, Ouzts voluntarily terminated her employment.[17]

---

[4] Id. ¶ 23.
[5] Id.
[6] Id. ¶ 24.
[7] Id. ¶ 25.
[8] Id. ¶ 26.
[9] Id.
[10] Id.
[11] Id.
[12] Id. ¶ 27.
[13] Id.
[14] Id. ¶ 30.
[15] Id. ¶ 33.
[16] Id. ¶ 35.
[17] Id. ¶ 39.

In an unrelated hire, in 1996 Harris sought out Dwayne Falks ("Falks") to take over a new business venture of his, Dagwood's sandwich shops ("Dagwood's").[18] Prior to his hire at Stokes-Harris, Falks had worked for Coca-Cola for twenty-seven years, for fifteen of which he served in management, culminating in his supervising 135 employees by the time of his departure.[19] In order to recruit Falks, Harris agreed to pay Falks the same salary and vacation benefit he had been earning at Coca-Cola.[20] Falks served as COO for the duration of his employment with Stokes-Harris.[21]

Falks was responsible for every aspect of Dagwood's, from initial franchising and building out of stores, to managing and operating the stores, to closing stores down and selling the equipment when the business ultimately failed.[22] He traveled to Destin, Florida, Foley, Alabama, and Houma, Alexandria, and Lafayette, Louisiana, to oversee construction, open, and work in Dagwood's stores.[23] Other duties pertaining to Dagwood's included evaluating store financial performance and managing expenses, handling operations for the Foley Dagwood's store while he searched for a manager, and attending multiple marketing meetings and training.[24]

Although Falks was hired principally to operate Dagwood's, in order to justify his salary he was also tasked with managing several other businesses under the Harris umbrella, including Leebos.[25] His Leebos duties included manager support, providing tools for the managers working under his supervision, orientation and licensing for employees, overall store operations, vendor

---

[18] Id. ¶ 4.
[19] Id. ¶ 6.
[20] Id. ¶ 7.
[21] Id. ¶ 5. Although at times Ouzts disputes when Falks began working at Stokes-Harris, she does not dispute that Falks served as COO. Pl.'s Statement of Contested Facts (Doc. 38-6), at 1.
[22] Id. ¶ 9.
[23] Id. ¶ 10.
[24] Id. ¶¶ 11-13.
[25] Id. ¶¶ 4, 18-21.

relationships, maintenance, and marketing.[26] He also was tasked with reviewing Leebos' financial statements and making adjustments to improve Leebos' financials.[27]

Falks handled the same general management tasks for Leebos that Ouzts subsequently carried out as DOO, except that he did not perform cashier audits or order gas.[28] Contrarily, Ouzts did no work for Dagwood's.[29] She acknowledges that she does not know what duties Falks performed with respect to Dagwood's, what percentage of his time was devoted to Dagwood's, or for how long he performed duties for Dagwood's.[30]

When Ouzts was promoted to DOO on November 21, 2011, her salary increased to $1,000 per week.[31] At that time, she became a payroll employee of Stokes-Harris.[32] Starting September 14, 2014, at which time Ouzts temporarily assumed some accounting responsibilities for Harris' companies, her salary was augmented to $1,500 per week.[33] Falks was paid $96,000 per year, around $1,846 per week, when he was hired by Harris, the same amount he had been earning at Coca-Cola.[34] He never received a raise or bonus during his employment with Stokes-Harris.[35]

Ouzts filed her complaint (Doc. 1) on February 29, 2016. Defendants filed their motion for summary judgment (Doc. 32) on May 15, 2017. Ouzts filed a response (Doc. 38) on June 29, 2017, and Defendants filed a reply (Doc. 44) on July 13, 2017.

---

[26] Id. ¶ 18.
[27] Id. ¶ 21.
[28] Id. ¶ 20.
[29] Id. ¶ 37.
[30] Id. ¶ 40.
[31] Id. ¶ 30.
[32] Id.
[33] Id. ¶ 35.
[34] Ex. A, Dep. Of Lance Harris (Doc. 32-3), at 6; Ex. B, Dep. Of Dwayne Falks (Doc. 32-4), at 38.
[35] Statement of Uncontested Material Facts (Doc. 32-7), at ¶ 22; Pl.'s Statement of Contested Facts (Doc. 38-6), at 2.

## II.    LAW & ANALYSIS

A. STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. See Anderson, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex, 477 U.S. at 325; Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Duffy, 44 F.2d at 312. "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Id. (citing Anderson, 477 U.S. at 247).

B. EQUAL PAY ACT CLAIM

The Equal Pay Act ("EPA") prohibits sex discrimination against an employee by means of unequal wages for equal work. 29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, a plaintiff must show that: (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993). "Once a plaintiff has made her prima facie case by showing that an employer compensates employees differently for equal work, the burden shifts to the defendant to show by a preponderance of the evidence that the differential in pay was made pursuant to one of the four enumerated exceptions." King v. Univ. Healthcare Sys., L.C., 645 F.3d 713, 723 (5th Cir. 2011) (quoting Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio, 261 F.3d 543, 546 (5th Cir. 2001)) (internal quotations omitted). Namely, the defendant must show that the pay differential resulted from: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d)(1).

The fourth enumerated exception, "any other factor other than sex," is a general, catch-all exception. See Fontenot v. Safety Council of Sw. Louisiana, No. 2:16-CV-84, 2018 WL 4178146, at *11-12 (W.D. La. Aug. 30, 2018). "Factors other than sex include, among other things, employees' '[d]ifferent job levels, different skill levels, previous training, and experience.'" Browning v. Sw. Research Inst., 288 F. App'x 170, 174 (5th Cir. 2008) (quoting Pouncy v. Prudential Ins. Co. of Am., 668 F.2d 795, 803 (5th Cir. 1982)). Courts have also found that prior salary history is a valid factor that falls within the catch-all exception. See Fontenot, 2018 WL 4178146, at *12. "If an employer responds with legitimate, non-discriminatory reasons for an

alleged pay disparity, the plaintiff must then show that the purported reason is a pretext for discrimination." Browning, 288 F. App'x at 174 (citing Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1137 n.8 (5th Cir. 1983)).

Assuming without deciding that Ouzts has stated a prima facie EPA claim, Defendants have met their burden of showing that any compensation differences resulted from factors other than sex. Falks had extensive prior experience when he began working for Harris. He was employed at Coca-Cola, a Fortune 100 company, for twenty-seven years. He served for fifteen years in management and was supervising 135 employees at the time of his hiring. By way of contrast, Ouzts had approximately seven years of management experience and was supervising five Leebos stores when she was promoted to DOO. Moreover, it is undisputed that "*[i]n order to recruit Falks*, Harris agreed to pay Falks the same salary and vacation he had been earning at Coca-Cola." Falks' significant prior experience and demand that his Coca-Cola compensation package be matched are legitimate, non-discriminatory factors that fall within the catch-all exception.

Ouzts has failed to demonstrate that Falks' prior experience and compensation matching demand are merely pretext for sex discrimination. In her response, she asserts that "Harris thought that the duties performed by Falks after Dagwood's closed were profitable at Falks' rate of pay" and thus, presumably, Harris was required to pay Ouzts the same amount he paid Falks as long as it remained profitable. This line of argument is inapposite. Whether Harris could afford to compensate Ouzts the same as Falks and still remain profitable is not at issue. What is dispositive at this juncture is whether Ouzts can show that a genuine dispute of material fact on pretext exists. Ouzts alleges no specific, concrete facts whatsoever which show that Falks' prior experience and demand that Harris match his Coca-Cola compensation package served as pretext for sex

discrimination. Accordingly, the Court finds there is no genuine dispute of material fact, and that Defendants are entitled to judgment as a matter of law.

### III.    CONCLUSION

As Ouzts has failed to establish an EPA claim, the Court finds that Defendants' motion for summary judgment should be granted.  The Court will issue a judgment in conformity with these findings.

**SIGNED** on this _____19th_____ day of September, 2018, at Alexandria, Louisiana.


_____
JUDGE DEE D. DRELL
UNITED STATES DISTRICT COURT